**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| N.M., *a minor, by and through his Guardian ad Litem Pamela McKeirnan.*, <br><br> Plaintiff, <br><br> v. <br><br> RAMONA UNIFIED SCHOOL DISTRICT, et al., <br><br> Defendants. | Case No. 24-cv-2306-BJC-MSB <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> [Doc. No. 17, 25] |

On April 18, 2025, Plaintiff N.M., a minor by and through his Guardian ad Litem Pamela McKeirnan ("Plaintiff"), filed a First Amended Complaint against Defendants Ramona Unified School District, Chris Gunnett, Chris Rogers, Audrey Beyer, Eileen Highley, and Does 1 through 100 (collectively, "Defendants"). Doc. No. 15 ("FAC"). Defendants have since filed a motion to dismiss. Doc. No. 17. Plaintiff filed an opposition, to which Defendants replied. Doc. Nos. 18, 19. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 20. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

## I. BACKGROUND

Ramona Unified School District ("RUSD") is a public education agency that operates numerous schools in San Diego, California. FAC ¶ 7. Hanson Lane Elementary School ("Hanson") is one such school within RUSD. *Id.* ¶ 8. Prior to the 2023–2024 school year, Defendant Gunnett was the Principal of Hanson, and Defendant Highley was Director of Special Education for RUSD. *Id.* ¶¶ 9, 12. At the beginning of the 2023–2024 school year, Defendant Rogers became the Principal of Hanson, and Defendant Beyer became Director of Special Education for RUSD. *Id.* ¶¶ 10, 13. At all relevant times, Defendant Thurman was the Superintendent for RUSD.[1] *Id.* ¶ 11.

Plaintiff N.M. is an African American child who attended Hanson until May 2024.[2] *Id.* ¶¶ 5, 21, 68. He has been diagnosed with numerous conditions and disorders that qualify him to receive special education services and an Individualized Education Plan ("IEP"). *Id.* ¶ 22. Plaintiff alleges that while a student at Hanson, he endured severe discrimination and harassment based upon his race and disabilities and that he was subjected to physical abuse by other students for approximately two years. *Id.* ¶ 23. Plaintiff explains that the bullying was so severe that he expressed suicidal intent and was hospitalized for his own safety. *Id.* ¶¶ 86, 218. During one altercation in particular in February 2024, another student repeatedly kicked Plaintiff in his head and chest, and he sustained a concussion as a result. *Id.* ¶¶ 56–58.

Plaintiff's mother became aware of the physical and emotional abuse in Spring 2022 and repeatedly reported the conduct to Gunnett, Highley and others within RUSD. *Id.* ¶ 26, 28–29, 35. Plaintiff alleges that despite being on notice of the discrimination and abuse, Defendants failed to stop the harassment or take adequate measures to protect him. *Id.* 36. Additionally, Plaintiff contends that because of Defendants' inaction and tolerance of the

---

[1] The Court hereinafter refers to Defendants Gunnett, Rogers, Highley, Beyer, and Thurman as the "Individual Defendants."

[2] At the time of filing the Complaint, N.M. was nine years old. FAC ¶¶ 5, 21.

abusive environment, he was deprived access to educational opportunities and benefits and was denied a safe learning environment. *Id.* 37–38. Consequently, Plaintiff brings sixteen (16) claims against Defendants for violation of his constitutional rights, as well as various federal and California state laws.

## II. LEGAL STANDARD

### A.   Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In ruling on a Rule 12(b)(1) motion attacking the complaint on its face, the Court accepts the allegations of the complaint as true. *See, e.g.*, *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiff['s] allegations." *White*, 227 F.3d at 1242 (internal citation omitted); *see also Thornhill Pub. Co., Inc. v. General Tel & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) ("Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary. . . '[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'") (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (9th Cir. 1977)). "However, where the jurisdictional issue and substantive issues are so intertwined that the question of

jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983). It is the plaintiff who bears the burden of demonstrating that the Court has subject matter jurisdiction to hear the action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

**B.    Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557); *Twombly*, 550 U.S. at 555 ("[F]actual allegations must be enough to raise a right to relief above the speculative level."). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Similarly, "conclusory allegations of

law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. DISCUSSION

Plaintiff pleads the following sixteen claims: (1) "Violation of 42 U.S.C. Section 1983 – Equal Protection" against the Individual Defendants; (2) "Violation of 42 U.S.C. Section 1983 – Fourteenth Amendment – Danger Creation" against the Individual Defendants; (3) "Violation of Constitutional Rights, 42 USC Section 1983 (Monell – Equal Protection)" against the Individual Defendants; (4) "Violation of Constitutional Rights, 42 USC Section 1983 (Monell – 14th Amendment Danger Creation)" against the Individual Defendants; (5) racial harassment in violation of Title VI of the Civil Rights Act against RUSD; (6) violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* against RUSD; (7) violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, against RUSD; (8) violation of California's Ralph Act, Cal. Civ. Code § 51.7, against the Individual Defendants; (9) violation of California's Bane Act, Cal. Civ. Code § 52.1,

against the Individual Defendants; (10) discrimination in violation of California Education Code § 220 against the Individual Defendants; (11) assault and battery against the Individual Defendants; (12) intentional infliction of emotional distress against the Individual Defendants; (13) negligence per se in violation of California Penal Code § 11166 against the Individual Defendants; (14) "Negligent Supervision/Failure to Warn" against the Individual Defendants; (15) "Negligent Failure to Warn, Train, or Educate Plaintiff" against the Individual Defendants; and (16) negligence against the Individual Defendants.

As a threshold matter, Plaintiff improperly characterizes his first two causes of action as claims for violation of 42 U.S.C. § 1983. *See* FAC at 11, 12.[3] Title 42 of the United States Code, Section 1983 is not itself the source of any substantive rights. This statute merely provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) (internal quotation marks omitted)). In other words, "Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Consequently, there is no such claim for "Violation of 42 U.S.C. Section 1983." *See Sernoffsky v. Novak*, 773 F. Supp. 3d 988, 1006 (S.D. Cal. 2025). To this extent, the Court **DISMISSES** Plaintiff's first two claims.

A plaintiff alleging a claim under § 1983 must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021). Here, Plaintiff references the Equal Protection Clause of the Fourteenth Amendment,[4] as well as his substantive due process rights protected by the Fourteenth Amendment. FAC

---

[3] Unless otherwise noted, all citations include the pagination assigned by the CM/ECF system.

[4] Plaintiff also appears to rely on the right to equal protection the Supreme Court has identified within the Fifth Amendment. *See United States v. Windsor*, 570 U.S. 744, 774 (2013).

¶¶ 73–74, 83.  Accordingly, the Court presumes for the limited purpose of resolving the present motion to dismiss that Plaintiff brings his first and second claims for violations of these constitutional rights, respectively.

The Court further presumes that by way of his third and fourth causes of action Plaintiff seeks to bring these two claims pursuant to *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978).  *Monell* provides that a local governmental entity:

> may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694; *see also Connick v. Thompson*, 563 U.S. 51, 60 417 (2011) ("A municipality or other local government may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell*, 436 U.S. at 692)).

Here, Plaintiff vaguely titles these two claims "Violation of Constitutional Rights" and references *Monell*.  FAC at 15, 18.  The substance of these two claims strongly suggests he is bringing his first two constitutional violation claims pursuant to *Monell*.  *See* FAC ¶¶ 94–96 (alleging a custom of inadequately responding as moving force behind violation), 110–111 (alleging a custom of harassment as moving force behind violation).

With this in mind, the Court turns to the substance of Defendants' motion to dismiss.

**A.   Eleventh Amendment Immunity**

Defendants first ask the Court to dismiss all of Plaintiff's claims against the Individual Defendants pursuant to the Eleventh Amendment.  According to the Individual Defendants, they are immune from suit.  Doc. No. 17-1 at 12–16.

The Supreme Court has interpreted the Eleventh Amendment, with limited exceptions, to prohibit a citizen from suing a state in federal court.  *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669–70. (1999).  The Supreme

Court has further held that state officials acting within their official capacity are not "persons" within the meaning of § 1983; when a state official is sued their official capacity the suit "is not a suit against the official but rather is a suit against the official's office" and as such "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Eleventh Amendment immunity also extends to state law claims brought against states and state officials in their official capacities in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992); *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133–34 (9th Cir. 2006) (holding that the Eleventh Amendment immunizes school districts in California from tort claims and claims brought under the Unruh Act and the Education Code).  As the Ninth Circuit has aptly explained: "the Eleventh Amendment deprives federal courts [of] jurisdiction to order state actors to comply with state law . . . It is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) (quoting *Pennhurst*, 465 U.S. at 106) (internal quotation marks omitted); *see also Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court.").  The Ninth Circuit has held that, under California law, school districts are considered state agencies for purposes of the Eleventh Amendment.  *See, e.g.*, *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992).

Plaintiff pleads Claims 1–4 and 8–16 against the Individual Defendants.  Defendants seem to acknowledge that Plaintiff only names the Individual Defendants in their individual capacities.  *See* Doc. No. 17-1 at 16 ("Here, there is no dispute that the First Amended Complaint sues the individual Defendants in their individual capacities."); *but see id.* at 11–12 (". . . Plaintiff has continued to sue the individual Defendants in their official capacities as employees of the District.").  In any event, a review of the First Amended Complaint reveals that Plaintiff explicitly pleads these claims against the

Individual Defendants in their individual—not official—capacities. FAC ¶ 17 (alleging that the Individual Defendants are "sued only in their individual capacity."). Seemingly recognizing this, Defendants contend that, despite this express language, Plaintiff nevertheless raises these claims against them in their official capacities. The Court disagrees. As the Supreme Court has explained:

> The distinction between individual- and official-capacity suits is paramount here. In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself. *Will v. Michigan Dept. of State Police*, 491 U. S. 58, 71 (1989); *Dugan v. Rank*, 372 U. S. 609, 611, 620-622 (1963). This is why, when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation. Hafer, 502 U. S. at 25. The real party in interest is the government entity, not the named official. *See Edelman v. Jordan*, 415 U.S. 651, 663-665 (1974). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer*, 502 U. S. at 25 (emphasis added); *see also id.*, at 27-31 (discharged employees entitled to bring personal damages action against state auditor general); *cf. Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971). "[O]fficers sued in their personal capacity come to court as individuals," *Hafer*, 502 U. S. at 27, and the real party in interest is the individual, not the sovereign.

*Lewis v. Clarke*, 581 U.S. 155, 162–63 (2017).

Here, there is no indication that Plaintiff intends to sue the offices of the Hanson Principal or RUSD Special Education Director or Superintendent. Stated differently, the real parties in interest here are the Individual Defendants, not their offices. The mere fact that the Individual Defendants were all RUSD employees and acting within those roles does not overcome the fact that Plaintiff seeks to hold them personally liable for their actions taken under color of state law. And it is well-settled that Plaintiff can pursue his claims for damages against them in this manner. *See, e.g., Hafer v. Melo*, 502 U.S. 21, 31 (1991). Accordingly, because Plaintiff brings his claims against the Individual Defendants

in their individual capacities, they are not entitled to Eleventh Amendment immunity. The Court therefore **DENIES** Defendants' motion on this basis.[5]

**B.      Qualified Immunity & Absolute Privilege**

Next, Defendants argue that the Individual Defendants are entitled to qualified immunity. Doc. No. 17-1 at 16–17. "The Supreme Court has 'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage of litigation.'" *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). However, the Ninth Circuit has found that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making," *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018), particularly where the Court is "aided only by the skeletal . . . factual picture sketched out in the complaint," *Kwai Fun Wong v. United States INS*, 373 F.3d 952, 956 (9th Cir. 2004). "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (internal citation omitted)).

Here, the Court finds that Defendants are not entitled to a determination on their qualified immunity defense at this stage of the litigation. Defendants merely set forth the relevant legal standard and do not substantively argue why they should be entitled to a finding of qualified immunity based upon the facts alleged in the First Amended Complaint alone. In light of the scant record before the Court, the Court declines to reach Defendants'

---

[5] To the extent Defendants ask the Court to dismiss Plaintiff's claims against RUSD (Claims 5, 6, and 7) pursuant to the Eleventh Amendment, *see* Doc. No. 17-1 at 19–20, the Court **DENIES** their motion. Title VI of the Civil Rights Act (Claim 5), Title II of the Americans with Disabilities Act (Claim 6), and Section 504 of the Rehabilitation Act (Claim 7) are all examples of Congress' express abrogation of states' Eleventh Amendment immunity. *See* 42 U.S.C. § 2000d-7(a)(1) (providing that states are not immune from suit under the Eleventh Amendment for violations of section 504 of the Rehabilitation Act of 1973 or Title VI of the Civil Rights Act of 1964); 42 U.S.C. § 12202 (providing that states are not immune from suit under the Eleventh Amendment for violations of Title II of the Americans with Disabilities Act of 1990). Moreover, Defendants repeat their Eleventh Amendment immunity argument elsewhere in their motion. *See* Doc. No. 17-1 at 18 (arguing that Plaintiff's § 1983 claims cannot be brought against RUSD and the Individual Defendants pursuant to the Eleventh Amendment).

qualified immunity defense at this time. *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 975 (N.D. Cal. 2017), aff'd in part, dismissed in part, 897 F.3d 1125 (9th Cir. 2018) ("[I]n many cases it is impossible to determine based on a complaint alone that qualified immunity is warranted. In such circumstances, a court may deny a qualified immunity defense without prejudice and after further factual development a defendant may re-raise the qualified immunity issue at summary judgment or at trial.") (citation and internal quotation marks omitted). Consequently, the Court **DENIES** Defendants' motion without prejudice to Defendants renewing their request at summary judgment.

Defendants also argue in passing that the Individual Defendants are entitled to absolute privilege. Doc. No 17-1 at 17. However, Defendants provide no legal support for their position that the Individual Defendants' challenged communications here—if any— are privileged. Both California Civil Code § 47 and *Brody v. Montalbano*, 87 Cal. App. 3d 725, 733 (Cal. Ct. App. 1978), are inapposite as this case does not appear to involve any published or broadcasted communications, and Plaintiff does not claim Defendants defamed him or made any libelous statements. Accordingly, the Court **DENIES** Defendants' motion on this basis as well.

**C.** *Monell* **Claims – Claims 3 & 4**

Defendants also ask the Court to dismiss Plaintiff's *Monell* claims, arguing that RUSD, as a school district, is not a municipality subject to liability. Doc. No. 17-1 at 18–19. Even assuming that is true, Plaintiff does not bring his *Monell* claims against RUSD. He only pleads Claims 3 and 4 against the Individual Defendants. FAC at 15, 18. For this reason, Defendants are not entitled to dismissal of these claims.

That said, there is simply no legal basis to pursue *Monell* claims against the Individual Defendants. As discussed above, *Monell* provides a vehicle for holding a government entity liable when its employees are found to have committed constitutional violations, and "a policy, practice or custom of the entity can be shown to be a moving force behind the violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Simply stated, a *Monell* claim may be brought only against a

municipality, not an individual acting in their individual capacity. *See Guillory v. Orange Cty.*, 731 F.2d 1379, 1382 (9th Cir. 1984) ("Monell does not concern liability of individuals acting under color of state law."); *see also Robles v. Cty. of San Diego*, No. 3:23-cv-00898-JES-BLM, 2024 U.S. Dist. LEXIS 128996, at *31 (S.D. Cal. July 22, 2024); *Doe v. Cty. of San Joaquin*, No. 2:24-cv-00899 WBS CKD, 2024 U.S. Dist. LEXIS 140233, at *4 (E.D. Cal. Aug. 6, 2024); *Cooper v. City of Fairfield*, No. 2:21-cv-01538-JAM-KJN, 2023 U.S. Dist. LEXIS 15238, at *8 (E.D. Cal. Jan. 30, 2023); *Green v. Cal. Dep't of Corr. & Rehab.*, No. 1:23-cv-01108-JLT-SAB, 2023 U.S. Dist. LEXIS 209693, at *29 (E.D. Cal. Nov. 22, 2023); *De Magdaleno v. Cty. of Riverside*, No. EDCV 21-2027 (SHKx), 2022 U.S. Dist. LEXIS 101086, at *8 (C.D. Cal. Apr. 14, 2022); *Reason v. City of Richmond*, No. 20-cv-01900-WBS-EFB, 2021 U.S. Dist. LEXIS 6015, at *13-14 (E.D. Cal. Jan. 12, 2021); *Casandra Pastora v. Cty. of San Bernardino*, No. EDCV 21-1410 JGB (SPx), 2021 U.S. Dist. LEXIS 258874, at *10 (C.D. Cal. Dec. 22, 2021). Thus, to the extent Plaintiff seeks to hold the Individual Defendants liable for the constitutional violations asserted in Claims 1 and 2 pursuant to *Monell*, the Court **DISMISSES** Claims 3 and 4 with prejudice.

**D.     California's Ralph Act and Bane Act – Claims 8 & 9**

Plaintiff's eighth and ninth claims are for violation of California's Ralph Civil Rights Act, Cal. Civ. Code § 51.7 ("Ralph Act"), and Tom Bane Civil Rights Act, Cal Civ. Code § 52.1 ("Bane Act"), respectively. Defendants move to dismiss these claims, asserting that Plaintiff fails to adequately plead them. Doc. No. 17-1 at 20–21.

The Ralph Act broadly provides that "[a]ll persons . . . have the right to be free from any violence, or intimidation by threat of violence committed against their persons or property" on the basis of a variety of protected characteristics, including, as relevant here, race. Cal. Civ. Code § 51.7(b)(1). Intending to supplement the Ralph Act and further deter violence, California later enacted the Bane Act, which imposes liability on a person who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured

by the Constitution or laws of this state." Cal. Civ. Code § 52.1(b).  Together, these statutes were enacted to "provide a civil remedy for hate crimes." *D.C. v. Harvard-Westlake Sch.*, 176 Cal. App. 4th 836, 844 (Cal. Ct. App. 2009).

> In order to state a claim under the Ralph Act, a plaintiff must show:
>
> (1) that the defendant threatened or committed violent acts against the plaintiff or his or her property; (2) that a motivating reason for the defendant's conduct was his or her perception of race (or other protected status); (3) that the plaintiff was harmed; and (4) that the defendant's conduct was a substantial factor in causing the plaintiff harm.

*Rodriguez v. Cty. of Contra Costa*, No. C 13-02516 SBA, 2013 U.S. Dist. LEXIS 158511, at *17 (N.D. Cal. Nov. 1, 2013) (citing *Austin B. v. Escondido Union Sch. Dist.*, 57 Cal. Rptr. 3d 454, 470 (Cal. Ct. App. 2007)).

A plaintiff pleading a Bane Act claim must allege: "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 183 Cal. Rptr. 3d 654, 676 (Cal. Ct. App. 2015)

Defendants argue that Plaintiff fails to plead how each Individual Defendant violated these statutes.  Doc. No. 17-1 at 20.  Defendants also maintain that these claims are not viable because mere negligence is not actionable.  *Id.* at 20–21.  While it appears that Plaintiff pleads conduct which, if true, would amount to more than mere negligence, *see, e.g.*, FAC ¶¶ 26, 28, 35, 36, 41, 87 (alleging that the Individual Defendants were aware of the bullying and harassment), ¶¶ 80, 92 (alleging that the Individual Defendants' inaction and failure to protect was intentional), the Court agrees that Plaintiff's group pleading is problematic as he does not put each Individual Defendant on notice of how his or her conduct allegedly violated these statutes.  With respect to his Bane Act claim, Plaintiff responds to Defendants' argument by pointing to paragraphs 182–185.  Doc. No. 18 at 19. However, these paragraphs are merely a formulaic recitation of the elements of his claim and are utterly devoid of any factual support.  And having independently reviewed the First Amended Complaint in its entirety, the Court finds that Plaintiff fails to plausibly plead his

Bane Act claim.  The Court agrees with Plaintiff that retaliatory actions may be sufficient to state a Bane Act claim based upon coercion or intimidation.  *See Bailey v. Shasta Union High Sch. Dist.*, No. 2:23-cv-01750-KJM-DMC, 2024 U.S. Dist. LEXIS 210247, at *7 (E.D. Cal. Nov. 18, 2024).  However, unlike in *Bailey*, Plaintiff does not allege that any Individual Defendant retaliated against him for reporting the alleged abuse and assaults.  At best, Plaintiff vaguely alleges that "yard duty personnel" punished him for reporting the discrimination and harassment, "going so far as to deprive him of his recess time."  FAC ¶ 47.  Assuming this amounts to retaliation that could plausibly support a finding of coercion or intimidation, Plaintiff does not plead that any Individual Defendant deprived him of his recess time.  Nor does Plaintiff plead who these individuals on yard duty are and why the Individual Defendants should be held liable for their allegedly retaliatory conduct.  To that end, Plaintiff pleads that the suggestion by his IEP team, which included Defendants Beyer and Rogers, *id.* ¶ 43, that Plaintiff be removed from recess was rejected by Plaintiff's parents, *id.* ¶ 44.  And, according to Plaintiff himself, his IEP team "suggested that Plaintiff should immediately report any bullying to school administrators," *id.* ¶ 44, which he seemingly had not done, *id.* ¶ 51.  These allegations do not plausibly support a finding that the Individual Defendants retaliated against Plaintiff for reporting the alleged discrimination and harassment.  For these reasons, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's Bane Act claim.

As to his Ralph Act claim, the Court similarly finds that Plaintiff fails to plausibly plead that the Individual Defendants threatened to commit or actually committed acts of violence against him.

According to Plaintiff, the Individual Defendants:

> subjected him to violence and fear of violence by failing to protect him from harassment and assault (including by failing to provide proper supervision) and refusing to take corrective action after being on notice of the harassment and abuse, thus enabling the violence, bullying, and harassment to continue and escalate unabated.

Doc. No. 18 at 19.

Even assuming that is true, Plaintiff does not explain how "enabling the violence" of other students plausibly amounts to a threat of violence or the commission of actual violence.  Stated differently, Plaintiff does not argue that Ralph Act liability can be imputed on the Individual Defendants based upon another student's violent acts.  And while respondeat superior and ratification might permit liability against an employer for California law civil rights violations, *see Vasquez v. Ramos*, 2025 Cal. Super. LEXIS 43898, *12 (Cal. Sup. Ct. July 30, 2025) ("Courts have applied principles of ratification and respondeat superior to these civil rights statutes."), Plaintiff does not persuasively argue that these principles should apply in the school administrator-student context.

Plaintiff first relies on three district court cases that involved violence in the prison setting, claims of deliberate indifference, and in one case, supervisory liability.  *See Armstead v. Cty. of Alameda*, No. 21-cv-05257-LB, 2022 U.S. Dist. LEXIS 54807, at *25-26 (N.D. Cal. Mar. 26, 2022) ("Here, the plaintiffs similarly pleaded deliberate indifference and the allegations are sufficient to state a claim under the Bane Act."); *Luttrell v. Hart*, No. 5:19-cv-07300-EJD, 2020 U.S. Dist. LEXIS 173856, at *15–16 (N.D. Cal. Sep. 22, 2020) ("[I]f a plaintiff adequately pleads a claim for deliberate indifference, which requires a pleading of reckless disregard, then he has sufficiently alleged the intent required for the Bane Act claim."); *see also Johnson v. Baca*, No. CV 13-04496 MMM (AJWx), 2014 U.S. Dist. LEXIS 196976, at *45 (C.D. Cal. Mar. 3, 2014) (declining to dismiss Ralph Act and Bane Act claims absent such "authority holding that a Ralph or Bane Act claim cannot be asserted against a sheriff as a supervisor for his role in promoting the use or threat of violence against a plaintiff").  These cases are inapposite, and Plaintiff fails to meaningfully argue otherwise.

Plaintiff also relies on *Black Lives Matter-Stockton Chapter v. San Joaquin Cty. Sheriff's Office*, 398 F. Supp. 3d 660, 679 (E.D. Cal. 2019), in support of his position that the Individual Defendants can be held liable because they "made him feel extremely fearful for his safety and vulnerable to continued abuse."  Doc. No. 18 at 23.  But in *Black Lives Matter-Stockton Chapter*, the plaintiffs' Ralph Act claim was not viable merely because

they pleaded the defendants made them fear for their safety but also because numerous unnamed defendants physically chased them and engaged in "menacing and threatening conduct" and because of this, the court allowed the plaintiff's Ralph Act claim to proceed against these doe defendants, specifically. 398 F. Supp. 3d at 679. Here, there are no allegations that any Individual Defendant engaged in threatening or menacing behavior. Similarly, *Stallworth v. Nike Retail Services*, does not aid Plaintiff, as the Individual Defendants are not alleged to have chased him or engaged in threatening conduct. No. 2:20-cv-05985-VAP-GJSx, 2021 U.S. Dist. LEXIS 243299, at *34 (C.D. Cal. Nov. 12, 2021). As such, absent allegations of other threatening or menacing conduct, the mere allegation that the Individual Defendants caused Plaintiff to feel fearful is insufficient to state a Ralph Act claim. Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's Ralph Act claim.

## E.     California Education Code § 220 – Claim 10

Plaintiff's tenth claim is for discrimination in violation of California Education Code § 220, and he pleads this claim against the Individual Defendants. California Education Code § 220 prohibits, as relevant here, "discrimination on the basis of . . . race . . . in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance." Cal. Educ. Code § 220. An "[e]ducational institution" is defined as "a public or private preschool, elementary, or secondary school or institution; the governing board of a school district; or any combination of school districts or counties recognized as the administrative agency for public elementary or secondary schools." Cal. Educ. Code § 210.3.

The Defendants are not an educational institution and therefore cannot be held liable under § 220. *See E.M. v. Cal. Dep't of Educ.*, No. 24-cv-07397-NW, 2025 U.S. Dist. LEXIS 129681, at *19 (N.D. Cal. July 8, 2025) (citing *Donovan v. Poway Unified Sch. Dist.*, 84 Cal. Rptr. 3d 285, 296 n.3 (Cal. Ct. App. 2008)). Plaintiffs seemingly concede this as their opposition is devoid of argument on this point. Consequently, the Court

-16-                                                   24-cv-2306-BJC-MSB

**GRANTS** Defendants' motion and **DISMISSES** Claim 10 against the Individual Defendants with prejudice.

### F.      Assault and Battery – Claim 11

Next, Defendants move to dismiss Plaintiff eleventh claim, for assault and battery against the Individual Defendants.  Plaintiff does not plead that any Individual Defendant physically touched him.  Instead, the dispute here turns on whether Plaintiff may maintain his claim against the Individual Defendants based upon their alleged ratification of the attacks by other students.  *See* Doc. No. 18 at 25.  Plaintiff appears to be correct that ratification is a valid theory of intentional tort liability in California.  *See Rakestraw v. Rodrigues*, 104 Cal. Rptr. 57, 60–61 (Cal. 1972) ("Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him."); *see also, e.g.*, *C.R. v. Tenet Healthcare Corp.*, 87 Cal. Rptr. 3d 424, 437 (Cal. Ct. App. 2009) ("As an alternate theory to respondeat superior, an employer may be liable for an employee's act where the employer either authorized the tortious act or subsequently ratified an originally unauthorized tort."); *Cisco Sys. v. Wilson Chung*, 462 F. Supp. 3d 1024, 1057 (N.D. Cal. 2020) (quoting *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1201 (E.D. Cal. 2009) ("Ratification applies to intentional torts like battery, assault, and false imprisonment.")).  However, again, Plaintiff does not explain how or why this theory of liability should apply in the school administrator-student context.  Nor does he cite any applicable authority in support of such a position.  *Cf. Benthin v. Washoe Cty. Sch. Dist.*, No. 3:24-cv-00428-ART-CSD, 2025 U.S. Dist. LEXIS 185543, at *21 (D. Nev. Sep. 19, 2025) (reviewing Nevada state law).  Rather, the two cases Plaintiff relies on involved an employer's liability for ratification of its employee's torts.  *See Baptist v. Robinson*, 49 Cal. Rptr. 3d 153, 167 (Cal. Ct. App. 2006); *see also Amini v. Cnty. of Ventura*, C.D. Cal. Case No. 2:22-cv-05420-

DSF-ADS, ECF Doc. No.140.[6]  Absent any authority showing that the Individual Defendants, as school administrators, can be held liable for the intentional torts of their students under a theory of ratification, the Court finds that this claim is not actionable as pleaded.  Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Claim 11.

## G.    Intention Infliction of Emotional Distress – Claim 12

Plaintiff's twelfth claim is for intentional infliction of emotional distress ("IIED"). Defendants argue that it is well-settled that there is no common law tort liability for public entities in California; municipal tort liability must be based on statute.  *See Miklosy v. Regents of Univ. of Cal.*, 80 Cal. Rptr. 3d 690, 708 (Cal. 2008) ("[S]ection 815 abolishes common law tort liability for public entities.").  Pursuant to California Government Code § 815, "[e]xcept as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Cal. Gov. Code § 815(a); *see also Becerra v. Cnty. of Santa Cruz*, 81 Cal. Rptr. 2d 165, 168 (Cal. Ct. App. 1998) ("In California, all government tort liability must be based on statute.") (citing Cal. Gov. Code § 815); *In re Groundwater Cases*, 64 Cal. Rptr. 3d 827, 848 (Cal. Ct. App. 2007) ("Of course there is no common law tort liability for public entities in California; such liability is wholly statutory.").

However, Plaintiff pleads his IIED claim against the Individual Defendants.  And California Government Code § 820 provides that "a public employee is liable for injury caused by his act or omission to the same extent as a private person."  Cal. Gov. Code § 820(a); *C.B. v. Moreno Valley Unified Sch. Dist.*, 544 F. Supp. 3d 973, 986 (C.D. Cal. 2021) ("A public employee can be held liable for an injury caused by their act or omission 'to the same extent as a private person.'") (quoting Cal. Gov. Code § 820(a)).

---

[6] It appears that Plaintiff cites to a Supplemental Summary Judgment Order available on the docket in a Central District case but not otherwise available on the legal research databases.

Consequently, Plaintiff's IIED claim is not subject to dismissal on this basis and for this reason, the Court **DENIES** Defendants' motion.

**H.    Negligence Per Se – Claim 13**

Plaintiff's thirteenth claim is for negligence per se in violation of California Penal Code § 11166.  Defendants argue that this section of the California Penal Code sets forth an evidentiary presumption, not a private right of action.  Doc. No. 17-1 at 22.  Under California law, negligence per se is an evidentiary doctrine not an independent cause of action.  *See, e.g.*, *Jones v. Awad*, 252 Cal. Rptr. 3d 596, 605 (Cal. Ct. App. 2019) ("Negligence per se is an evidentiary doctrine, rather than an independent cause of action.") (citing *Quiroz v. Seventh Ave. Ctr.*, 45 Cal. Rptr. 3d 222, 245 (Cal. Ct. App. 2006)).  "[I]t operates to establish a presumption of negligence for which the statute serves the subsidiary function of providing evidence of an element of a preexisting common law cause of action." *Quiroz*, 45 Cal. Rptr. 3d at 244.  As such, the doctrine creates a presumption of negligence if the plaintiff shows four elements:

> (1) the defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protn the statute, ordinance, or regulation was adopted.

Cal. Evid. Code § 669(a); *Alcala v. Vazmar Corp.*, 84 Cal. Rptr. 3d 402, 407 (Cal. Ct. App. 2008); *Quiroz*, 45 Cal. Rptr. 3d at 244.  "Even if the four requirements . . . are satisfied, this alone does not entitle a plaintiff to a presumption of negligence in the absence of an underlying negligence action." *Quiroz*, 45 Cal. Rptr. 3d at 244.

Plaintiff elsewhere pleads a common law claim for negligence (Claim 16).  Thus, Plaintiff's Claim 13 for negligence by proof of violation of California Penal Code § 11166 would appear to be subsumed by Plaintiff's general negligence claim.  Nevertheless, the Court is not convinced Plaintiff's claim should be dismissed.  Despite the clear authority explaining that negligence per se is not an independent cause of action, it appears to be also

true that some courts in California have nevertheless permitted a claim entitled negligence per se to proceed. *See, e.g.*, *Garcia v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1205 (E.D. Cal. 2009) ("It has been held that Penal Code § 11166(a) may form the basis of a negligence per se claim.") (citing *Alejo v. City of Alhambra*, 75 Cal. App. 4th 1180, 1185–95 (Cal. Ct. App. 1999)). Therefore, to the extent Plaintiff's thirteenth claim is an alternative theory of liability for common law negligence, the Court declines to dismiss this claim. For this reason, the Court **DENIES** Defendants' motion.

## I.       Punitive Damages

Defendants also ask the Court to strike Plaintiff's request for punitive damages. Doc. No. 17-1 at 23–24. In order to state a prima facie claim for punitive damages, Plaintiff must set forth the elements as stated in the general punitive damage statute, California Civil Code § 3294. These statutory elements include allegations that the defendant has been guilty of oppression, fraud, or malice. *See* Cal. Civ. Code, § 3294(a). To prove malice, Plaintiff must show the Individual Defendants' conduct was despicable, or circumstances that are "base," "vile," or "contemptible." *Id.* ("The statute plainly indicates that absent an intent to injure the plaintiff, . . . the additional component of 'despicable conduct' must be found."); *see also* Cal. Civ. Code § 3294(c). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id*. § 3294(c)(2). "'Fraud' is 'an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.'" *Id*. § 3294(c)(3).

Plaintiff argues that he sufficiently pleads facts that demonstrate the Individual Defendants acted with the requisite malice and oppression. Doc. No. 18 at 27. The Court agrees. Accepting the facts in the First Amended Complaint as true, the Individual Defendants were repeatedly informed over a period of approximately two years that Plaintiff was being subjected to pervasive racial bullying and physical attacks by his peers and that they failed to take any steps to protect Plaintiff or otherwise deter the other

students' abuse. This is sufficient, at this stage, to pursue punitive damages under California law. For this reason, the Court **DENIES** Defendants' motion.

### IV. CONCLUSION

Based upon the foregoing, the Court **GRANTS IN PART** Defendants' motion to dismiss. Consistent with the discussion above, the Court **DISMISSES** Claims 3, 4, and 10 against the Individual Defendants **with prejudice**. The Court further **DISMISSES** Claims 1, 2, 8, 9, and 11 **with leave to amend**. Defendant's motion as to Claims 5, 6, and 7 is **DENIED**, and those claims survive. If Plaintiff wishes to file an amended pleading, he must do so on or before **April 6, 2026**. Defendants may then respond within the time prescribed by Rule 15. Any claim not re-alleged and any defendant not named in the third amended complaint will be considered waived. *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1989); *Lacey v. Maricopa Cnty*., 693 F.3d 896, 928 (9th Cir. 2012) (noting that after dismissal with leave to amend, claims may be "considered waived if not repled").

**IT IS SO ORDERED**.

Dated:  March 6, 2026

_____

Honorable Benjamin J. Cheeks
United States District Judge